# NEW YORK SUPERIOR COURT.

ASAHEL P. SQUIRES, respondent agt. EDGAR M. BROWN and others, appellants.

In any case a *judgment* against a *corporation* is *prima facie evidence* in an action under the statute to charge the *stockholders* or *trustees* personally, that the *debt exists* or of the indebtedness, and the circumstance that recovery of judgment must be had before suit brought, only makes the judgment serve the further purpose of showing that the condition has been complied with.

Under the statute, (*Laws of* 1848, *ch.* 40, § 9, *p.* 56,) a copy of the *certificate* of incorporation filed in pursuance of the act, certified by the county clerk, &c., is presumptive legal evidence of the *incorporation,* and of the appointment of the *trustees.*

A *trustee* of a corporation organized under this act may *resign* his trusteeship. If he do resign he does not become liable for the debts of the company on the subsequent default or neglect of the remaining trustees to make and file the annual certificate required by the act. On his resignation his powers and duties as trustee cease.

Where individuals with a view to the formation of a corporation under the act, are induced by false representations to consent, and as a step thereto, sign and file a certificate in the office of the county clerk, but discover the falsehood of the representations, and abandon the enterprise of forming the corporation before any stock is subscribed, and without filing any certificate in the office of the secretary of state, these facts will exempt them from liability for debts contracted in the name of the company, on a subsequent default to make and file the annual certificate required by the act under which they attempted an incorporation.

*Heard General Term, November,* 1860.
*Before* BOSWORTH, *Ch. J.,* WOODRUFF and WHITE, *J. J.*
*Decided April the 20th,* 1861.

IN 1855, a corporation was organized by Walker and others, for the manufacture of plate glass, called " *The National Plate Glass Works.*" In 1856 its projectors proposed to reorganize it and form a new corporation by the name of " *The National Plate Glass Company.*" The plaintiff claims to be a creditor of the last named corporation, and brings this action against the defendants Brown and Dusenbury, on the ground that they were trustees thereof.

The defendants are proceeded against under § 12 of the act passed February 17th, 1848, relative to the formation of corporations for manufacturing and other purposes, for an omission to publish *within twenty days* from the first day of January, a statement of the amount of its capital, as required by such section.

Upon the trial the plaintiff offered in evidence a certificate of incorporation filed in the clerk's office in the *city of New York*, in April, 1856, but gave no evidence that a certificate was filed in the office of the secretary of state. Brown and Dusenbury are named as trustees in the articles filed in the New York office.

The plaintiff offered in evidence a record of a judgment in his favor against " The National Plate Glass Company," in the supreme court, on the 9th day of April, 1858, for the same cause of action which is set out in the complaint in this action. The process in the action being served upon the treasurer. ˙ The counsel for the defendants objected to the receipt of such judgment roll as evidence against them. The court overruled the objection and decided to receive the judgment roll as evidence. Counsel for the defendants excepted.

The plaintiff also offered in evidence an execution issued upon such judgment to the sheriff of the city and county of New York, with the return of said sheriff thereon indorsed " nulla bona," which execution and return were issued and made before the commencement of this action.

The counsel for said defendants objected to the receipt of such execution and return as evidence.

The court decided to admit the same in evidence. The counsel for said defendants excepted.

The plaintiff introduced other evidence tending to show the existence of a claim in his favor for meats and provisions furnished to the workmen of the•company, and offered in evidence a due bill for the amount of his claim signed " National Plate Glass Co., J. N. Richmond, Superintendent."

The defendants' counsel objected to the introduction of the due bill as evidence; the objection was overruled, and defendants excepted.

After the plaintiff had rested, the counsel for the defendants offered to prove by a witness that there was a proposition made to form a company to be called The National Plate Glass Company, it being represented to the defendants, Brown and Dusenbury, that The National Plate Glass Works at Lenox was doing a good business and out of debt, and that all that was wanted was an increase of capital; that the company to be organized was to succeed to the business and capital of the old company; that the stock was never subscribed for; as a step the certificate was made and signed and filed in the county clerk's office; not filed in the secretary of state's office, because understood that company was not to be formed until filed; that Brown and Dusenbury shortly afterwards ascertained that old company was largely in debt, and property was levied upon and sold to pay the debt. Before this they made up their minds not to have the company instituted, and abandoned the enterprise of forming it. Enterprise abandoned as early as September, 1856.

Which offer and evidence in support thereof was overruled and excluded by the court, and the counsel for the defendants duly excepted.

The counsel for the defendants also offered to prove that the defendant Brown withdrew from the company and resigned his office of trustee before first December 1856; which offer and proof was overruled. The court refused to admit evidence of such facts unless it was shown that such resignation took place before the plaintiff's debt occurred, and that the plaintiff knew of it. The counsel for the defendant Brown excepted.

After the case was closed the counsel for the defendants asked the judge to charge the jury that the judgment recovered against the company was no evidence of a debt from

the company to the plaintiff to charge the defendants, Brown and Dusenbury.

The judge refused so to charge, and the counsel for the defendants excepted.

The defendants' counsel further requested the court to charge, that if the jury believe that there was no corporation in existence subsequent to the first day of December, 1856, defendants are not liable in this action.

The judge refused so to charge, but on the contrary ruled and charged that the matter contained in such request was not for the consideration of the jury.

To which refusal and ruling the counsel for the defendants excepted.

The counsel for the defendants further requested the judge to charge, that if the jury believe that Richmond had no authority to make the note or due bill in evidence, that then it was no evidence of debt against the company.

The court stated that the substance of what was so requested was contained in the charge made, and refused to charge it further.

The counsel for the defendants requested the judge to charge, that the due bill is no evidence of a debt of the plaintiff against the company.

The judge refused so to charge; to which refusal the counsel for the defendants excepted.

A verdict was given for plaintiff, from the judgment on which an appeal was taken to the general term.

EDWARDS PIERREPONT, *for respondent.*
HOOPER C. VAN VORST, *for appellants.*

By the court, WOODRUFF, Justice. This action is brought for the purpose of charging the defendants with a debt alleged to be due from " The National Plate Glass Company," alleged to be a corporation organized under the " act to authorize the formation of corporations for manufacturing and other purposes, passed February the 17th,

1848," on the ground that the defendants are trustees of that corporation, and that they have made, published and filed no annual statement or report stating the amount of the capital, the proportion paid in, or the amount of the existing debts, as required by the twelfth section of the act, and that the defendants are jointly and severally liable for the debts of the company as provided in such case by that section.

I. In order to establish the fact of indebtedness by the said company, the plaintiff was permitted to give in evidence the record of a judgment against the company, and an execution against the company returned by the sheriff unsatisfied.

The decision of this court in *Belmont* agt. *Coleman*, (1 *Bosw. R.*, 188,) is to the effect that where stockholders are sought to be charged in a like case, a judgment against the corporation is complete evidence to prove the indebtedness. In that case the authorities bearing on the question are collected and reviewed, and that decision must be taken to dispose of the question in the present case. If competent as against the stockholders of a corporation, much more should it be held competent as against the trustees to whom the management of its affairs is confided. It is sufficient to say that it was *prima facie* evidence of the indebtedness; and if it be conceded that it was not conclusive, and might be overcome by proof that it was obtained by fraud or collusion, or by proof that no such indebtedness in fact existed, still it was not erroneous to receive it in evidence when offered. The circumstance that the statute makes the trustees liable even without proof that a judgment has been recovered against the company, does not affect the question. If in any case a judgment is *prima facie* evidence as against a stockholder or trustee, that the debt exists, the circumstance that recovery of judgment must be had before suit brought, only makes the judgment serve the further purpose of showing that the condition has been complied with.

In the present case the judgment was not held conclusive; the plaintiff gave other evidence of the original debt, and the defendants were not in any manner precluded from giving any proof that the indebtedness was not the debt of the company, but did actually give evidence for the purpose of showing that it was contracted without the authority of the company, and that the company never was liable therefor. If, therefore, the plaintiff sufficiently proved the existence of the corporation, and that the defendants were trustees thereof at the time of the default to make, publish and file the statement required by the act, it was not erroneous to permit the judgment to be given in evidence.

We do not perceive that the execution and the return thereof were in any wise material. If the judgment was satisfied, that was matter of defence, and it was altogether unnecessary for the plaintiff to prove that an execution had been issued and returned. But the reception of the evidence could not in any conceivable manner prejudice the defendants. It did prove one of the allegations in the complaint, which was distinctly put in issue by the answer, and it proved that allegation by the very best, if not the only proper evidence of the fact. And although we think the issue was an immaterial issue, we cannot say, that after the issue had been voluntarily made, the defendants were entitled to an exception to a ruling which permitted the plaintiff to prove what he had alleged and the defendants had denied.

II. In order further to prove the indebtedness of the corporation to the plaintiff, the latter was permitted to give in evidence a certificate or due bill stating the balance due the plaintiff on the 1st of January, 1857, to be $276.97, taken from the ledger of the company, and signed " National Plate Glass Company, by J. N. Richmond as superintendent."

There was proof tending to show that Richmond was the agent of the company; proof which the jury deemed (as

appears by their finding) sufficient to show that he was their agent at Lenox, Massachusetts, having charge of the business of their manufactory ; employing and paying laborers, purchasing materials, and superintending the business there generally. Richmond had testified to the manner in which the indebtedness to the plaintiff arose, and showed that it was in the regular and proper conduct of the business of the company, and that the company had received the consideration for the indebtedness, viz. provisions delivered by the plaintiff to the workmen by direction of the agent, in payment of their wages. But Richmond could not testify from memory the precise balance due to the plaintiff, and therefore stated that such balance constituted the amount of a due bill or note given by the company through him as superintendent, about December, 1856, or January, 1857.

Under these circumstances the due bill was admissible on either of two grounds. *First.* The proof of Richmond's agency was *prima facie* sufficient to warrant his giving this due bill, as a statement of account, an original voucher for the balance due, which, if not contradicted, disproved or avoided, was *prima facie* evidence of the debt arising in the course of Richmond's agency. (*Story on Agency*, § 451.) *Second.* It was competent to produce and read it, to make the evidence of Richmond (already *prima facie* sufficient as to the fact of the indebtedness) definite and certain as to the *amount* of the balance to which he had testified. If in this aspect of the case it could be claimed that the books of the company should have been produced, no such point was raised at the trial.

III. If the foregoing views are correct, and it was not erroneous to permit the judgment record and due bill to be given in evidence, it follows that the judge committed no error in refusing to instruct the jury that neither the judgment nor the due bill were any evidence as against the defendants of a debt from the company to the plaintiff.

The judge did declare that the due bill was only a liquidation or voucher for that debt, and he submitted the question to the jury, whether Richmond was authorized as the agent of the company to contract the indebtedness on their behalf.

IV. The motion to dismiss the complaint was properly denied. The statute (*Laws of* 1848, *ch.* 40, § 9, *p.* 56,) in terms provides that the copy of any certificate of incorporation filed in pursuance of the act, certified by the county clerk, &c., shall be presumptive legal evidence of the fact therein stated, and requires that it be received as such evidence in all courts, &c. That certificate the plaintiff produced and gave in evidence. This *prima facie* established an incorporation under the act, and that the defendants were trustees on the 4th of April, 1856. It is made by the act presumptive evidence, and it is all the plaintiff was bound in the first instance to prove to show actual incorporation. Whether it was competent for the defendants to show that in fact the company never was formed; that this certificate was only an initiatory step; that no certificate was ever filed in the office of the secretary of state as the act required; and that the project was abandoned, will be presently considered; but the certificate made a *prima facie case* of an incorporation, and that the defendants were the trustees. He then gave proof to show that the company acted under the corporate name; that they became indebted to the plaintiff; and the allegation that no statement was filed as required by the act, not being denied in the answer, the plaintiff's case was *prima facie* made out; and it was proper to put the defendants to counter proofs or proof of their defence.

V. The remaining questions arise upon the offer of the defendant Brown to show that he resigned his office of trustee before the first day of December, 1856; the offer of both defendants to show that there was a proposition made to form a company to be called the National Plate

Glass Company, which should succeed to the business and capital of the old company (called " The National Plate Glass Works",) and that it was represented to the defendants that the old company was doing a good business and was out of debt; but that the stock was never subscribed for ; that though the certificate was signed and filed in the county clerk's office as a step towards the formation of the new company, it was not filed with the secretary of state, because it was understood that the company was not to be formed until it was so filed, and the defendants discovered that the representations were false ; that the old company was largely in debt, and their property levied on and sold to pay their debts, and defendants made up their minds not to have the company instituted, and as early as September, 1856, abandoned the enterprise of forming the new company ; and finally, the request of the defendants' counsel that the jury be instructed that if they " believe that there was no corporation in existence subsequent to the 1st day of December, 1856, the defendants are not liable in this action."

It must be assumed for the purposes of this appeal, that if the defendants had been permitted to give the proofs they offered, such proofs would have established the facts proposed to be established thereby ; and our inquiry is, therefore, were the facts so proposed to be proved competent, or would they, if proved, establish or tend to establish any defence ?

And the questions so raised may be briefly stated : 1st. Can a trustee of a corporation organized under the act in question resign his trusteeship ?    2d. If he do resign, does he become liable for the debts of the company on the subsequent default or neglect of the remaining trustees to make and file the annual certificate required by the act ?    3d. Where individuals, with a view to the formation of a corporation under the act, are induced by false representations to consent, and as a step thereto sign and file a certificate

in the office of the county clerk, but discover the falsehood of the representations, and abandon the enterprise of forming the corporation before any stock is subscribed, and without filing any certificate in the office of the secretary of state—will these facts exempt them from liability for debts contracted in the name of the company, on a subsequent default to make and file the annual certificate already mentioned?

In relation to the first two of the questions thus stated, it seems to me that there is little room for doubt. If a trustee of such a corporation, acting in good faith, desires to terminate his official term, I perceive nothing in the nature of his office which forbids his resigning. Although called trustees in the act authorizing such incorporations, those officers are not trustees in the sense of being holders of the legal title to the property *in trust* for others, but they are made by the act (§ 3) managers of the stock, property and concerns of the company, while the company itself, as a corporation, holds (§ 2,) the real and personal property necessary for carrying on its operations. And regarding a trustee as a mere manager or director, there is no inconsistency in allowing him the opportunity to resign that office, no more than there would be in permitting the president or other officer to resign.

The fourth section of the act expressly contemplates a resignation by a trustee, provides for the exigency, and so impliedly sanctions it. It enacts that " when any vacancy shall happen among the trustees by death, *resignation* or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of said company."

The power and right to resign the office of trustee is therefore, I think, clear, and such a resignation in the very terms of the statute creates a vacancy. With such resignation the powers of the resigning trustee cease, and it would seem a necessary corollary that his duties also cease.

Shall the subsequent default of other trustees, over whom he has no control, subject him to liability for the debts of the company? If it can, then he is made liable for a default in no sense his own, and is subjected to a penalty for the non-performance of an act which (when it should have been performed) he could not do himself, nor by any means within his control compel others to do. No such injustice, and, I might say, no such absurdity, results from the provisions of the act in question.

When it is said in section twelve of the act, that " every such company shall, within twenty days from the first day of January, annually make a report which shall be published," &c., " and if any of said companies shall fail so to do, all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made, it means all those who are trustees when the company shall so fail—all those whose duty as managers it is to see that the report is made. As well might it be said that all who have ever been trustees are liable for such a subsequent default, as that any one who, though once a trustee, has by resignation ceased to be one, is liable.

The clause making the trustees liable, until such report is made, shows that the liability is imposed upon persons who have it in their power to limit their liability by causing the report to be made and filed.

I think it as clear as it is just, that the penalty imposed by this section falls upon those whose duty has been neglected, and not upon those who having resigned, had no duty to perform in the matter.

This construction of the act is sustained by *Boughton* agt. *Otis*, 29 *Barb. R.*, 196; *affirmed* 21 *N. Y. R.*, 261; *The Shaler and Hall Quarry Co.* agt. *Bliss*, 10 *Abb. R.*, 311; *Young* agt. *New York & Long Island Co.*, *id.*, 229; *Garrison* agt. *Howe*, 17 *N. Y. R.*, 458; *Tracey* agt. *Yates*, 18 *Barb. R.*, 152.

The case of *Moss* agt. *Oakley* (2 *Hill R.*, 265,) is not in conflict with these views. There the stockholders of a corporation were made liable for the debts of the company, and the moment a debt was contracted the liability attached, and of course it attached to those who were then stockholders. Here the liability attached to the trustees when and not until the default to make and publish the annual statement occurred. The reasoning of *Moss* agt. *Oakley* would make the liability attach to those who were *then* trustees, and so that case supports the views already expressed.

It was argued that it was proper to reject evidence that Brown had resigned, because it was not also offered to prove that his resignation was accepted. We think there is no foundation for this suggestion. The resignation spoken of in the statute requires no acceptance. It is a surrender of the office, a voluntary yielding of its possession, and is consummated by the act of the resigning trustee, declaring to the company his resignation and his vacation of the office, by whatever form expressed.

Whether the resignation was recorded in the minutes or not, could not affect the power of Brown to resign, or the effect of such resignation to relieve him from further duty as trustee. So that proving it by the record would not necessarily be the only mode of establishing the fact. Besides, the proof was rejected, not because it was offered to be proved by parol, but " the court refused to admit evidence of such facts unless it was shown that such resignation took place before the plaintiff's debt was contracted, and that the plaintiff knew it." And again : the witness who was under examination, had the minutes in his hands, and it does not appear by the case that it was not by those minutes (proved by the witness,) that the proposed fact might have been established.

There was, therefore, error in rejecting proof that the

defendant Brown resigned his office of trustee before the first of December, 1856.

The third question above stated, if it was the simple inquiry whether trustees who have acted as such, and have held the corporation before the public as duly constituted, and so invited the confidence of the community, and especially of the plaintiff, can, when proceeded against by the plaintiff as a creditor, deny the incorporation and prove that it was not lawfully organized, might perhaps be answered by the cases which declare that such acts of the trustees create an estoppel in favor of creditors, and so forbid their proving that the corporation was not what it was held out to be by themselves, or that they are not what they have professed themselves to be, trustees of a corporation. (*Eaton* agt. *Aspinwall*, 6 *Duer R.*, 176 ; 19 *N. Y. R.*, 119, *and the cases therein referred to; Caryl* agt. *McElrath*, 3 *Sand.*, 126; *Mead* agt. *Keeler*, 24 *Barb. R.*, 20; *Jones* agt. *Dana, id.*, 395.)

But the offer here goes further, and bore directly on the question whether in truth there ever had been any other organization than the National Plate Glass Works, and whether all that was done was not in fact by the managers of that company, in pursuance of an expectation that the organization of the new company would be completed. If in fact the defendants were defrauded into a consent to take part in organizing a new company, but before the new organization was completed they discovered that they had been deceived, and actually abandoned the enterprise before the alleged default in filing a certificate, so that in truth in January, 1857, there was no such corporation, then there are two answers to the plaintiff's claim.

*First.* That there never was any such company, and the defendant never did anything to create any belief that the company was organized ; and

*Second.* At the time the alleged default arose, the company had been abandoned and its affairs were in liquidation. We are not satisfied that if the defendants had

been permitted to prove all that they offered, they would not have so overcome the proof given by the plaintiff, as to have shown that no estoppel existed.

The allegations in the defendants' answer are quite loose and general, and it might, on a critical examination, be suggested that the answer would not be likely to apprise the plaintiff that the resignation of the defendants, or the facts relied upon, would be shown on the trial; but no objection was made there, nor is it suggested on the argument of the appeal that the answer is not sufficient to let in the proof, if otherwise competent, or rather that it is not sufficiently set up in the answer.

There must be a reversal of the judgment as to the defendant Brown, and a new trial ordered, with costs to abide the event.

And as to the other appellant, Dusenbury, the same defence of resignation applies also to him; and if he is not liable as a trustee of the National Plate Glass Company, by reason of his resignation, or because that organization never was completed, then he is not liable in this action as a trustee of the National Plate Glass Works, in which he was confessedly a trustee, because it is not averred or shown that the Plate Glass Works contracted the debt or are liable to the plaintiff therefor. On the contrary, his judgment is not against that corporation; and it is not alleged that that corporation did not file reports as required by law.

Judgment reversed, and new trial ordered, costs to abide the event of the suit.